# Westfall *versus* Mapes.

1. All contracts must be performed according to the general intent and understanding of the parties.

2. An agreement to not establish or permit a ferry between two rifts in a river, means from the lower extremity of the upper to the upper extremity of the lower rift.

3. Grants of monopolies in restraint of trade and against public convenience and improvement, are to be construed strictly against the grantees.

4. For a violation of a contract not to erect a ferry to conflict with the plaintiff's ferry, the measure of damages is the loss actually sustained.

Error to the Court of Common Pleas of *Pike County.*

The facts fully appear in the opinion of the court by

Black, J.—Westfall, the defendant below, had a right by an act of the New York legislature, to an exclusive ferry over the Delaware, between two specified points. He sold this right to Mapes, the defendant, and covenanted that he would not permit any other person to establish a ferry on his land between the points mentioned in the act, while Mapes should have a ferry there. This suit is brought for a breach of that covenant. The proof shows that a ferry was established by a third person, and that the plaintiff's profits were thereby diminished. This rival ferry was not between the places mentioned in the agreement, nor on the defendant's land. But the ferryman's house, and a private road diverging from the public road to the new ferry, were on the defendant's land and by his permission.

It can hardly be necessary to say that this covenant was literally kept. Its express terms could be violated only by permitting a ferry to be established at the place where the defendant agreed that it should not be done. The place is described carefully, on the defendant's land, between Coskey's rift and Caykendall's rift. The new ferry is not between the rifts, but below, or at least not above, the lower one. This takes the act out of the agreement whether it was on the defendant's land or not, since it could not be within it unless it was done both between the rifts and on the defendant's land. It is true, however, that all contracts must be performed according to the general intent and understanding of the parties. The judge said rightly that a man cannot do indirectly what he has bound himself not to do directly. An agreement, though performed to the letter, is broken if its spirit be violated. He who binds himself under seal to do or not to do a particular thing, enters into an implicit covenant that he will act in perfect good faith upon all matters connected with it. He cannot keep the word of promise to the ear and break it

[Westfall v. Mapes.]

to the hope. Thus, articles of partnership will bind each partner not to set up any other store or business which may injure that of the firm, although there was no express agreement to that effect. A person who agreed to deliver as many pieces of cloth as would amount to a certain number of yards, cut the cloth into pieces so small they were useless. A vendor of real estate covenanted to leave the timber on the ground, and so he did, but cut it down. In these cases, the courts held that though the express covenant was kept, there was an implied covenant which had been broken. But this agreement not to establish a ferry between certain designated points on the river does not imply any obligation whatever with reference to other points of the river above or below. When the plaintiff took a covenant against a rival ferry between the rifts, he took the risk of all rivalry elsewhere. If the defendant may not allow a ferry immediately below the Caykendall rift, he cannot do so at a distance of ten miles down the river. The argument seems to be that the defendant was impliedly bound to use all the power which his ownership of the land in the neighborhood gave him, to prevent the establishment of any ferry at any place which might be a rival of the plaintiff's. But such is not the law.

We differ from the judge of the Common Pleas in the construction of the phrase, " between the rifts." It is from the foot of the upper to the head of the lower rift. A thing which is in the middle of the lower one is not between the two. Grants of monopolies in restraint of trade and against public convenience and improvement are not to be construed liberally in favor of the grantees but strictly against them. The true interpretation of the grant by the State of N. Y. to Westfall, and of his own transfer to Mapes, will confine the monopoly within limits expressly designated. Every other part of the river is open to the enterprise of other men. If the ferry complained of had been between the rifts, but not on the defendant's land, we think the covenant would not have been broken by the permission of the covenantor to build a ferryman's house and make a private road on his land.

In that case the ferry itself would have been no violation of the covenant, and the defendant could not have been sued for giving aid and comfort to the person who erected it. Nothing more than compensation for the plaintiff's loss can ever be given for the violation of a contract like this, and the court was therefore in error when they instructed the jury to give additional damages for any malice with which they might believe the defendant to have been actuated.

Judgment reversed, and *venire facias do novo* awarded.